UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAUL BRAUD                                                                    CIVIL ACTION

VERSUS                                                                         NO. 15-112-JWD-RLB

GEO HEAT
EXCHANGERS, L.L.C

## ORDER

Before the Court is Plaintiff's Motion to Compel (R. Doc. 7) Defendant's complete response to Request for Production No. 11, which seeks the personnel files of the following individuals: Plaintiff, Calvin Nevels, Charles Vaccaro, Mike Tracy, Kevin Hill, John Vessel, Brandon Belvin, Marvin Plant, Luther Graham, Kevin Lemoine, and Jeremy Braud. (R. Doc. 7-2 at 6). Defendant filed an Opposition in response to the Motion. (R. Doc. 10). Plaintiff filed Reply Memoranda sharpening his legal arguments, clarifying any limitation agreement between the parties and confirming the discovery already provided. (R. Docs. 11-2, 13).

Neither party appears to dispute the fact that Defendant has sufficiently produced responsive documents relating to Plaintiff, Charles Vaccaro, Kevin Hill, Mike Tracy and John Vessel. (R. Docs. 10, 13). While these individuals are no longer at issue, the Court reminds the parties of their on-going obligation to supplement their discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

As such, the only personnel records that remain in dispute belong to Calvin Nevels, Brandon Belvin, Luther Graham, Marvin Plant, Kevin Lemoine and Jeremy Braud. In his

Opposition, Defendant indicated that "Plaintiff's counsel agreed that GEO's employee personnel files held confidential, financial, medical and other sensitive information" and "agreed to [generally] limit" the request to records of: (1) performance; (2) discipline; and (3) complaints. (R. Doc. 10 at 3). According to Defendant, this limitation applied to all of the personnel files at issue. Plaintiff, however, claims that he only agreed to limit the personnel files of Vaccaro, Hill, Tracy and Vessel. (R. Doc. 13 at 1). Otherwise, with respect to Nevels, Lemoine, Belvin, Graham, Plant and Braud, Plaintiff "still seeks their [sic] entire personnel file for each of these employees minus payroll, beneficiary, or medical records or personal identifiers." (R. Doc. 13 at 2).

I.   **BACKGROUND**

In this action, Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the equivalent state law, by subjecting him to "severe and pervasive sexual harassment from his supervisor" (Calvin Nevels) and firing him in retaliation for reporting the harassment. (R. Doc. 1 at 2-4). Specifically, Plaintiff claims that in an October 7, 2014 meeting with John Vessel (co-worker), and Calvin Nevels (supervisor), Nevels demanded oral sex from Plaintiff. (R. Doc. 1 at 2-3). Nevels repeated his demands later that day and again on October 8, 2014. (R. Doc. 1 at 3). Both Plaintiff and John Vessel immediately filed internal complaints with Defendant. When nothing was done to remedy the situation, Plaintiff complained to his safety manager about Defendant's failure to address his complaints of harassment. (R. Doc. 1 at 3-4).

About a month later, on November 11, 2014, Plaintiff was transferred to a less desirable position; "Nevels, however, remained [Plaintiff's] supervisor." (R. Doc. 1 at 4). Two days after the transfer, Defendant terminated Plaintiff's employment, claiming "that a number of vague

complaints had been made by unidentified co-workers about [Plaintiff] and that these complaints had recently 'all happened at once.'" (R. Doc. 1 at 4). Plaintiff later learned that his subordinates, Brandon Belvin, Marvin Plant, Luther Graham and Kevin Lemoine, "complained of racist comments made by Plaintiff," which Plaintiff denies. (R. Doc. 13 at 2). Another employee, Jeremy Braud, was accused of making similar racist comments and was fired at the same time Plaintiff was terminated.

Plaintiff now asks the Court to compel production of the personnel files of his allegedly harassing supervisor, Calvin Nevels; his subordinates who complained of racist comments, Brandon Belvin, Luther Graham, Marvin Plant and Kevin Lemoine; and his co-worker who was likewise accused of making racist comments for which he was terminated, Jeremy Braud.

## II.    APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure[1] allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Whether discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

---

[1] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery. The 2015 amendments "restor[e] the proportionality calculation to Rule 26(b)(1)," but do not "change the existing responsibilities of the court and the parties to consider proportionality." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015). The amendments likewise do not "place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015). "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, -- F. Supp. 3d --, 2015 WL 7771078, at *5 (N.D. Tex. Dec. 3, 2015) (applying the amended version of Rule 26(b)(1) to a motion to compel filed before December 1, 2015). Given the restorative nature of the 2015 amendments, the Court finds that applying the amendments to the instant Motion to Compel is both just and practicable.

likely benefit." Fed. R. Civ. P. 26(b)(1).  Information may fall within this scope of discovery even if it is not admissible in evidence. Fed. R. Civ. P. 26(b)(1).

## III. DISCUSSION

### A. Calvin Nevels

In response to Request for Production No. 11, Defendant represents that it has produced the requested documents relating to Calvin Nevels (R. Doc. 10 at 1); however, this representation seems dependent on Defendant's belief that the parties agreed to limit the request to performance evaluations, disciplinary records and complaints.  In his Reply, Plaintiff explains that Defendant has produced only 28 pages of documents from Nevels' file.  Among those documents is a "sexual harassment complaint" filed against Nevels in 2013. (R. Doc. 13 at 4).  "[B]ut there appears to be no record of any investigation regarding that complaint or any other documents related to it other than a verbal warning . . . ." (R. Doc. 13 at 4).  The remaining documents consist of Plaintiff's own complaint and the "supporting statement[s] of two co-workers," which Plaintiff had in his possession prior to filing suit. (R. Doc. 13 at 4).

This production, Plaintiff argues, is insufficient as he is seeking Nevels' "entire personnel file minus payroll, beneficiary, or medical records or personal identifiers." (R. Doc. 13 at 4). According to Plaintiff, this information is relevant to pretext. (R. Doc. 11-2 at 3).  Defendant's own handbook states that "sexual harassment is cause for immediate termination," but Defendant continued employing Nevels in violation of its own policy. (R. Doc. 11-2 at 3).  Therefore, "Nevels' personnel file is highly relevant to why GEO chose to retain a recidivist sexual harasser while firing a sexual harassment complainant." (R. Doc. 11-2 at 4).  For this reason, Plaintiff is seeking documents "relating to Nevels' accolades, his performance reviews, his awards, his meeting of productions schedules, his employment interviews, qualifications, and employment

application, as well as documents evidencing additional discipline and investigation of his conduct . . . ." (R. Doc. 11-2 at 4).

The Court agrees with Plaintiff to the extent that portions of the personnel file (minus confidential information) of the alleged harasser are relevant. *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files."); *Cason v. Builders FirstSource-Southeast Group, Inc.*, 159 F. Supp. 2d 242, 248 (W.D.N.C. 2001) (ordering defendant to produce "the personnel files of the two alleged harassers"); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 687 (D. Kan. 2000) ("[T]he individual is alleged to have engaged in the discrimination or harassment at issue or played an important role in the employment decision or incident that gives rise to the lawsuit, the personnel file will be . . . discoverable.").

The file is relevant to Plaintiff's claim that Defendant failed to follow its own policy in response to Plaintiff's claims of harassment or reasonably failed to prevent and correct any known harassing behavior by Nevels. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n.29 (5th Cir. 2005) (acknowledging "the inference of pretext raised by [an employer's] failure to follow an internal company policy"); *Vance v. Ball State University*, 570 U.S. -- , 133 S. Ct. 2434, 2439, 2441 (2013) ("If the harassing employee is the victim's co-worker, the employer is liable only if . . . the employer knew or reasonably should have known . . . but failed to take remedial action."); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (in the absence of a tangible employment action taken by the supervisor, an employer is vicariously liable for a supervisor's harassment unless it took reasonable care to prevent and correct harassment and the employee failed to take advantage of any preventative or corrective

opportunities). Defendant's actions taken in response to Plaintiff's allegations and those of other employees is relevant to the claims before this Court. For the same reasons, any complaints of sexual harassment or sex-based discrimination made against Nevels, including any investigation into those complaints, are likewise relevant.

Mr. Nevels personnel file is also relevant to whether he constitutes a supervisor for purposes of liability for harassment. Under Title VII, an employer's liability for workplace harassment depends on the status of the harasser:

> If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a 'supervisor,' however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. Id., at 807, 118 S.Ct. 2275; Ellerth, supra, at 765, 118 S.Ct. 2257. Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

*Vance*, 133 S. Ct. at 2439 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) and *Ellerth*, 524 U.S. at 765)).

In this context, an employee is a "supervisor if he or she is *empowered* by the employer to take tangible employment actions against the victim." *U.S. Equal Employment Opportunity Commission v. Boh Bros. Construction Co., L.L.C.*, 731 F.3d 444, 452-53 (5th Cir. 2013) (emphasis added). A tangible employment action is any "significant change in employment status." *Ellerth*, 524 U.S. at 761; *see also Vance*, 133 S. Ct. at 2442 (examples of tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Boh Bros. Construction Co., L.L.C.*, 731 F.3d at 453 n.3 ("Wolfe testified that he had the authority to fire,

discipline, and transfer employees during the relevant period—qualifying him as a supervisor under *Vance*."). Mr. Nevels' personnel file will therefore contain relevant information about whether Nevels was empowered by Defendant to take tangible employment actions against Plaintiff.

Moreover, this relevance is outweighed by any privacy concerns, especially considering Plaintiff does not want any medical records, personal identifiers or payroll and beneficiary information. *Coughlin*, 946 F.2d at 1159-60.

As such, Plaintiff's Motion to Compel is **GRANTED in part** to the extent Plaintiff seeks production of Calvin Nevels' personnel file, minus any medical records, personal identifiers or payroll and beneficiary information. However, the Court limits production to the following information: (1) **performance evaluations**; (2) **complaints** of sexual harassment or sex-based discrimination made against Nevels, including any resulting investigation into those complaints; (3) **disciplinary records**; and (4) **job duties**. Defendant must **produce** these documents within **14 days** of this Order.

B.   **Brandon Belvin, Luther Graham, Marvin Plant and Kevin Lemoine**

Plaintiff claims that these four employees accused Plaintiff of making racist comments, which resulted in his termination. According to Plaintiff, these statements were "manufactured and were asserted against him in an effort to get rid of him because he complained about sexual harassment." (R. Doc. 11-2 at 3). Moreover, the credibility of these four employees is at issue as they "were subordinates of Plaintiff" and were disciplined by him on several occasions. (R. Doc. 11-2 at 3). For example, Plaintiff claims that he fired Graham at one point, but that Graham was re-hired by Calvin Nevels. (R. Doc. 13 at 5). Plaintiff allegedly disciplined Brandon Belvin by requiring him to "to perform corrective work, which upset him." (R. Doc. 13 at 5). Marvin Plant

was allegedly "written up" by Plaintiff and eventually fired. (R. Doc. 13 at 5). For these reasons, Plaintiff argues that the personnel files of these employees, minus any medical records, personal identifiers or payroll and beneficiary information are relevant.

The Court agrees that some of the information contained in the personnel files of Belvin, Graham, Plant and Lemoine are relevant and discoverable. First, Defendant has made these complaints against Plaintiff relevant by relying on them to support its legitimate non-discriminatory reason for terminating Plaintiff's employment. Therefore, the complaints filed by these employees against Plaintiff are relevant, as is any resulting investigation. Moreover, the disciplinary records of these employees, including any subsequent employment actions (e.g., firings, re-hirings, demotions, transfers, etc.), are relevant to any bias they may have towards Plaintiff and directly bear on their credibility as witnesses.

Therefore, Plaintiff's Motion to Compel is **GRANTED in part** to the extent he seeks the personnel files of Brandon Belvin, Luther Graham, Marvin Plant and Kevin Lemoine. Within **14 days** of this Order, Defendant must **produce**: (1) any **complaints** filed by these employees against Plaintiff, including any resulting investigation; (2) the **disciplinary records** of these employees, including any subsequent investigations or employment actions (e.g., firings, re-hirings, demotions, transfers, etc.); and (3) any **performance evaluations**.

### C. Jeremy Braud

According to Plaintiff, Jeremy Braud was also accused, along with Plaintiff, of making racist comments. Jeremy Braud was likewise terminated. For this reason, Plaintiff is requesting his complete personnel file, minus any medical records, personal identifiers or payroll and beneficiary information.

Because both Plaintiff and Jeremy Braud were allegedly terminated for engaging in the same conduct, Braud's disciplinary history as well as any complaints of discriminatory conduct that Braud filed against Defendant are relevant and discoverable. *See Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 897 (5th Cir. 2012) (comparing disciplinary histories of the plaintiff and an employee who allegedly engaged in similar misconduct); *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260-62 (5th Cir. 2009) (same); *Wheeler v. BL Development Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (comparator should be outside the protected group).

Therefore, Plaintiff's Motion to Compel is **GRANTED in part** to the extent he seeks documents relating to: (1) Jeremy Braud's **disciplinary history**; (2) any **complaints** of discriminatory conduct that Jeremy Braud made against Defendant; and (3) Jeremy Braud's **performance evaluations**.  Defendant must **produce** these documents within **14 days** of this Order.

## IV. CONCLUSION

For the reasons given above, Plaintiff's Motion to Compel is **GRANTED in part** and **DENIED in part**.  Each party will bear its own costs. *See* Fed. R. Civ. P. 37(a)(5)(C) (court may apportion expenses between the parties where the motion is granted in part and denied in part).

Signed in Baton Rouge, Louisiana, on March 31, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**